1 **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                      FOR THE DISTRICT OF ARIZONA

8

9  James River Ins. Co.,                    )    No. CV-05-1213-PHX-FJM
                                            )
10              Plaintiff,                   )    **ORDER**
                                            )
11  vs.                                      )
                                            )
12                                           )
   Hebert Schenk, P.C.,                      )
13                                           )
                Defendant.                   )
14                                           )
                                            )
15  _____)

16

17

18         This court has before it plaintiff James River Insurance Company's ("James River")

19  Motion for Summary Judgment (doc. 15), defendant Hebert Schenk, P.C.'s ("defendant")

20  Response (doc. 17), and James River's Reply (doc. 26).  We also have before us James

21  River's Motion for Summary Judgment regarding defendant's Counterclaim[1] (doc. 19),

22  defendant's Response (doc. 40), and James River's Reply (doc. 45).

23                                    **I.**

24         On April 19, 2004, defendant submitted an application for professional liability

25  insurance coverage to James River for defendant and its attorneys.  Question 10C of the

26         _____

27  [1]We note that James River filed two motions for summary judgment in contravention
   of the directions set forth in this court's Rule 16 Scheduling Order (doc. 25).  Because no
28  objection was raised, because the second motion is now fully briefed, and for purposes of
   judicial expediency, we agree to consider the motion.

1   application required identification of "any circumstances, allegations, Tolling Agreements

2   or contentions as to any incident which may result in a claim being made against the

3   Applicant." PSOF, Ex. 1 to Ex. A (hereinafter, "Question 10C"). Defendant identified nine

4   potential claims and submitted detailed information regarding these claims.

5       On April 27, 2004, after submitting the application, but before James River delivered

6   the policy, David Nolan, a client of defendant, sent John J. Hebert (a Hebert Schenk lawyer)

7   a letter indicating Mr. Nolan's intent to end Hebert's representation of their interests

8   (hereinafter, the "Nolan Letter"). Mr. Nolan's letter stated,

9       Without a doubt, you have abandon [sic] us. . . . I have made no fewer than
        a dozen attempts to communicate with you. . . . I have not received a single
10      call or email. This is despite your advice to us on 2/5, that we should file a
        lawsuit against Wall in order to secure some future recovery potential for our
11      $2.264 million investment. . . . [Y]ou have stopped communicating and have
        failed to follow through on specific actions you recommended to protect our
12      interests. . . .

13      . . . .

14      The work promised never was performed. We have been treated more like
        the opposing party, not your firm's client. Under the circumstances, the
15      charges since February 1, 2004 are in dispute. . . .

16  PSOF, Ex. B. In addition, Mr. Nolan requested the return of his documents and the write-off

17  of his outstanding legal bills.

18      Two days after receiving the Nolan Letter, Hebert sent Nolan a memo stating, "[y]ou

19  are correct in every aspect of you [sic] fax. I apologize and will have your documents ready.

20  . . . It has been my entire fault." PSOF, Ex. D. Despite Mr. Nolan's clear statement in his

21  letter that "[i]t is time to bring your representation of us in the Princess matter to an end,"

22  Hebert responded in his memo, "I was a little unclear with regard to your letter about the

23  future. Do you want us to return original documents . . . but still proceed to advise with

24  regard to actions to collect from Wall–or are you going to retain another firm?" Id.

25      On June 7, 2004, an underwriter at James River faxed to defendant an insurance quote

26  setting forth certain contingencies that defendant was required to meet prior to issuance of

27  a policy, including "receipt and satisfactory review of the following: Updated signatures of

28  the application and of all of the application supplements. A no known claims and no known

1   claims incidents statement on firm letterhead." <u>PSOF, Ex. 2 to Ex. A</u>.  In response, on June

2   10, 2004, defendant's representative sent a letter stating, "[t]his confirms that the law firm

3   of Hebert Schenk has no known claims and no known claims incidents since the time of the

4   application for legal malpractice coverage to date." <u>PSOF, Ex. 3 to Ex. A</u>.  Defendant never

5   advised James River of the communication between Nolan and Hebert, nor the incidents

6   related thereto.[2]

7        On June 12, 2004, James River issued an insurance policy for the period of June 12,

8   2004 through June 12, 2005 (the "Policy").  The Policy provided that it was issued "in reliance

9   upon the statements made in the Application and its attachments and any materials submitted

10  therewith." <u>PSOF, Ex. F</u> at 4.  The Policy further provided that coverage "does not apply to

11  any 'Claim' against the 'Insured' based on or directly or indirectly arising from . . . [a]ny claim

12  . . . disclosed in the application for this Policy." <u>PSOF, Ex. F</u>, at 6.

13       On October 7, 2004, defendant received notice that David and Cheryl Nolan were

14  filing a claim related to allegations made in the Nolan Letter.  <u>See</u> <u>PSOF, Ex. 4 to Ex. A</u>.

15  Subsequently, on November 24, 2004, the Nolans filed suit against defendant and Mr. Hebert

16  individually, asserting legal malpractice and breach of fiduciary duty (hereinafter, "Nolan

17  Claim").

18       The issue presented in this case is whether James River can deny insurance coverage

19  on the Nolan Claim due to defendant's failure to disclose receipt of the Nolan Letter and the

20  incidents related thereto in response to Question 10C in the application or to the June 7th fax

21  requesting updated information.

22

23

24

_____

25

26       [2]We note that the parties treat James River's June 7, 2004 fax as repeating the same request for information as that contained in Question 10C of the application. <u>See</u>, <u>e.g.</u>, <u>DSOF</u>

27  ¶¶ 79, 83.  Therefore, we also assume that the June 7th fax sought supplemental identification of "any circumstances, allegations, Tolling Agreements or contentions as to any incident

28  which may result in a claim."

## II.

A.R.S. § 20-1109 permits an insurer to deny coverage when an insured makes a misrepresentation in an insurance application, which is (1) fraudulent, (2) material to the acceptance of risk, and (3) the insurer, in good faith, would not have provided coverage with respect to the hazard resulting in the loss if the insurer had known the true facts. See Valley Farms, Ltd. v. Transcon. Ins. Co., 206 Ariz. 349, 353, 78 P.3d 1070, 1074 (Ct. App. 2003). The statute allows an insurer to deny coverage if it can prove either actual or legal fraud. Id. "The difference between legal fraud and actual fraud is one of intent. Actual fraud requires an intent to deceive while legal fraud does not." Equitable Life Assurance Soc'y v. Anderson, 151 Ariz. 355, 357, 727 P.2d 1066, 1068 (Ct. App. 1986). Legal fraud has been found where "a question on an insurance application seeks facts which are presumably within the personal knowledge of the insured and are such that the insurer would naturally have contemplated that the answer represented the actual facts, and the answer is false." Stewart v. Mut. of Omaha Ins. Co., 169 Ariz. 99,102-03, 817 P.2d 44, 47-48 (Ct. App. 1991) (citing Illinois Bankers' Life Ass'n v. Theodore, 44 Ariz. 160, 170-71, 34 P.2d 423, 427 (1934). In contrast, "[w]here the response is merely an expression of opinion, the insurer must prove actual fraud to rescind a policy." Id. at 103, 817 P.2d at 48. See also Smith v. Republic Nat'l Life Ins. Co., 107 Ariz. 112, 115 n.1, 483 P.2d 527, 530 n.1 (1971).

Generally, "[w]hether a question elicits a factual response or an opinion is a matter for the trier of fact to decide based on the particular facts of each case." Equitable Life Assurance Soc'y, 151 Ariz. at 359, 727 P.2d at 1070. However, when "reasonable persons could not differ as to whether the answer was a statement of opinion or a statement of fact, . . . the question becomes one of law." Id.

We now turn to the evidence in the present case. To defeat James River's claim of legal fraud, defendant contends that Question 10C elicited an opinion, not a statement of fact, and therefore James River must demonstrate actual fraud in order to deny coverage. Defendant claims that the question by its very nature requires the insured to exercise judgment

1    to determine whether or not the particular facts and circumstances "may result in a claim."

2    According to defendant, this subjective determination necessarily elicited defendant's opinion

3    regarding the import of these facts and circumstances.  Defendant further contends that the

4    Nolan Letter did not set forth any actionable allegations, or indicate that the Nolans were

5    considering a legal malpractice claim against defendant; instead the Nolan Letter merely

6    expressed concerns about Mr. Hebert's (1) failure to communicate, (2) failure to return

7    original documents, and (3) failure to provide a tentative litigation budget so that Mr. Nolan

8    could shop the potential Wall litigation to other litigation counsel.

9         Notwithstanding defendant's subjective construction of the Nolan Letter, however, the

10   Letter expressly stated that the Nolans were terminating defendant's services because of their

11   belief that Mr. Hebert had "abandoned" them, failed to return their calls and emails for almost

12   three months, failed to take steps necessary to protect their interests, including a specific

13   reference to the commencement of a lawsuit against Wall in order to protect their $2.264

14   million investment, and failed to perform work that was promised.

15        We hold that on the evidence presented, as a matter of law, the insurance application

16   elicited a statement of fact.  Question 10C broadly required the disclosure of facts which,

17   objectively considered, might give rise to a claim, without respect to the insured's subjective

18   belief.  The putative response to Question 10C may have read: "The Nolan Letter and

19   incidents related thereto may result in a claim."  This is a statement of fact.  No reasonable

20   person would deny that the Nolan Letter and related circumstances "may result in a claim."

21   See Equitable Life Assurance Soc'y, 151 Ariz. at 359, 727 P.2d at 1070 (applying the

22   reasonable person test).  Therefore, we conclude that defendant's failure to include this

23   information in response to Question 10C, by way of its response to the June 7, 2004 request

24   for additional information, constituted legal fraud.

25        The remaining two elements of A.R.S. § 20-1109, whether the misrepresentation was

26   material to the acceptance of risk, and whether the insurer would not have provided coverage

27   if it had known the true facts, are straightforward and may be considered together.  It is

28   incontrovertible that the identification of circumstances that may lead to a claim was material

1   to James River's acceptance of risk.  In fact, the Policy expressly stated that coverage "does

2   not apply to any 'Claim' against the 'Insured' based on or directly or indirectly arising from

3   . . . [a]ny claim . . . disclosed in the application for this Policy."  <u>PSOF, Ex. F</u>, at 6.

4   Furthermore, the application itself states that "THERE WILL BE NO COVERAGE

5   AFFORDED UNDER THE PROPOSED INSURANCE FOR ANY MATTER(S) LISTED

6   IN RESPONSE TO THIS SUPPLEMENT."  <u>PSOF, Ex. 1 to Ex. A</u>, at Supp. 6 (emphasis in

7   original).  Accordingly, James River clearly stated that matters disclosed as potential claims

8   in the application would not be covered under the Policy.

9          We therefore conclude that, as a matter of law, James River is entitled to deny

10  coverage of the Nolan Claim because defendant made a material, factual misrepresentation

11  in the insurance application, including the June 7, 2004 request for supplemental information,

12  and James River would not have provided coverage if the true facts had been disclosed.

13  Accordingly, we grant James River's Motion for Summary Judgment (doc. 15).[3]

14                                              **III.**

15         Defendant filed a Counterclaim against James River asserting breach of contract and

16  bad faith, arguing that James River refused to provide a defense against the Nolan Claim.

17  Defendant's breach of contract claim is moot given our conclusion that there was no coverage

18  available for the Nolan Claim under the Policy.  The bad faith claim, however, does not

19  become moot by virtue of this holding.  "The covenant of good faith and fair dealing can be

20  breached even if the policy does not provide coverage."  <u>Lloyd v. State Farm Mut. Auto. Ins.</u>

21  <u>Co.</u>, 189 Ariz. 369, 377, 943 P.2d 729, 737 (Ct. App. 1996).  The appropriate inquiry in

22

23  _____

24         [3]We also reject defendant's argument that an ambiguity existed with respect to the
    definition of the word "claim" because James River used an insurance application created by

25  another entity.  Defendant appears to argue that somehow as a result of this "ambiguity" it
    is impossible to glean James River's state of mind regarding the meaning of "claim."  <u>See</u>

26  <u>Defendant's Response</u> at 5-9.  This argument is wholly without merit.  First, James River's
    state of mind regarding the definition of the word is irrelevant.  Second, the word "claim" can

27  be construed according to its plain and ordinary meaning and therefore no ambiguity exists.

28

evaluating a bad faith claim "is whether there is sufficient evidence from which reasonable jurors could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable." <u>Zilisch v. State Farm Mut. Auto. Ins. Co.</u>, 196 Ariz. 234, 238, 995 P.2d 276, 280 (2000); <u>see also</u> <u>Deese v. State Farm Mut. Auto. Ins. Co.</u>, 172 Ariz. 504, 507, 838 P.2d 1265, 1268 (1992).  We again turn to the facts of this case.

Defendant claims that "[a]t the time that Hebert Schenk filed its Answer and Counterclaim, [July 28, 2005], James River was not, in fact, providing a defense to Hebert Schenk." <u>Defendant's Response to Motion for Summary Judgment re: Counterclaim</u> at 5. However, a letter from defendant's own defense counsel, dated January 12, 2005, indicates that "James River will provide a defense to Hebert Schenk for the Nolan Claim." <u>PSOF re: Counterclaim, Ex. D-1</u>.  Further, undisputed evidence establishes that James River has paid defendant's defense counsel $56,876.26 for services rendered in defense of the Nolan Claim beginning on February 3, 2005.  Moreover, defendant now acknowledges that James River has been providing a defense in the Nolan action under a reservation of rights, but now contends that the failure to provide a defense is just one of several allegations of bad faith asserted in the Counterclaim.[4]  Defendant's argument is without merit.  All of the allegations raised in the Counterclaim involve the question of whether James River properly provided a defense for the Nolan Claim.  Defendant has presented no evidence from which we could conclude that James River breached its covenant of good faith and fair dealing.  Accordingly, we grant James River's Motion for Summary Judgment on defendant's Counterclaim (doc. 19).

---

[4]Defendant contends that James River (1) failed to act reasonably in investigating, evaluating and processing Hebert Schenk's claim; (2) failed to effectuate a prompt and equitable settlement of the Hebert Schenk claim; (3) failed to consider Hebert Schenk's interests; and (4) jeopardized Hebert Schenk's security under the insurance policy.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IV.**

**IT IS THEREFORE ORDERED GRANTING** James River's Motion for Summary Judgment (doc. 15). **IT IS FURTHER ORDERED GRANTING** James River's Motion for Summary Judgment on defendant's Counterclaim (doc. 19).

DATED this 27th day of February, 2006.

_Frederick J. Martone_

Frederick J. Martone
United States District Judge